**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF ALABAMA**

| | | |
|---|---|---|
| **IN RE:** | § | |
| | § | |
| **KISHA N. WALKER** | § | **CHAPTER 13** |
| | § | |
| **DEBTOR(S)** | § | **CASE NO. 05-05243-BGC** |
| **VANDERBILT MORTGAGE & FINANCE, INC.,** | § | |
| | § | **MOTION NO.** |
| | § | ______________________ |
| **MOVANT(S)** | § | |
| **VS.** | § | |
| | § | |
| **KISHA N. WALKER** | § | |
| | § | |
| **AND** | § | |
| | § | |
| | § | |
| | § | |
| **RESPONDENT(S)** | | |

**MOTION FOR RELIEF FROM STAY**
**BY VANDERBILT MORTGAGE & FINANCE**

COMES NOW Vanderbilt Mortgage & Finance, (hereinafter "Movant"), a secured creditor in the above bankruptcy proceeding and moves this Honorable Court to enter an Order granting relief from Section 362 of the United States Bankruptcy Code to Movant so as to permit recovery of the collateral securing this claim and as grounds for said Motion states as follows:

1. Movant is a secured creditor in the above referenced Chapter 13 proceeding.

2. The Debtor financed the purchase of a 1998 Clayton Ranger Manufactured Home, Green, VIN #CLA042803TN through Movant. Movant has a security interest in

this manufactured home as evidenced by the documents attached hereto as Exhibit "A" and incorporated herein by reference.

       3.      The Debtor's Chapter 13 plan fails to list Movant as a creditor.

       4.      Based on the forgoing, Movant asserts that it is not adequately protected, and unless Movant is granted relief from the automatic stay so as to repossess and dispose of the collateral, Movant will suffer irreparable harm and injury.

       WHEREFORE, Movant moves this Honorable Court:

       A.      Enter an Order granting to Movant relief under 11 U.S.C. Section 362(d) so as to permit Movant to pursue its state court remedies, repossess and dispose of the collateral securing its claim in accordance with its security agreement and the Uniform Commercial Code and thereafter amend its claim for the unsecured deficiency which may thereafter remain.

       B.      Movant prays for such other and further relief to which it may be entitled.

/s/Stuart D. Albea
Stuart D. Albea (ALBES-6156)
Attorney for Vanderbilt Mortgage & Finance
File No. 36000.652

OF COUNSEL

ROSEN, COOK, SLEDGE, DAVIS,
  SHATTUCK & OLDSHUE, P.A.
2117 Jack Warner Parkway
Post Office Box 2727
Tuscaloosa, Alabama 35403
Telephone: (205) 344-5000

P:\FRANCES\Shattuck\VMF\Kidd, Sheila\Walker.MFR.doc

## CERTIFICATE OF SERVICE

This is to certify that I have this day served the following:

Kisha N. Walker
Debtor
3095 Oden Mills Road
Sylacauga, AL 35151

Wayman Powell, III
469 Turtle Creek Drive
Birmingham, AL 35226

D. Sims Crawford
Trustee
P.O. Drawer 10848
Birmingham, AL 35202

This the 17th day of November, 2005.

/s/ Stuart D. Albea
Stuart D. Albea (ALBES-6156)
Of Counsel for Vanderbilt Mortgage & Finance

| | | |
|---|---|---|
| **STATE OF TENNESSEE** | § | **AFFIDAVIT OF** |
| | § | |
| **COUNTY OF KNOX** | § | **ROBERT YOUNG** |

Before me, the undersigned authority, personally appeared Robert Young, hereinafter referred to as Affiant, who being known to me and being first duly sworn, deposes and says as follows:

1 My name is Robert Young and I am employed by Vanderbilt Mortgage & Finance (hereinafter "Movant"). I have personal knowledge of the facts stated herein, and I am custodian of any records attached hereto. I have a personal understanding of how the books, records and computer systems relating to loan servicing at Movant function and how they relate to the bankruptcy proceeding filed by the Sheila Y. Kidd (hereinafter "Debtor"). Among my responsibilities as an employee of Movant is to monitor the processing of payments and other requirements of the Debtor under the terms of the Debtor's *Retail Installment Contract and Security Agreement*

2. The Debtor executed a *Retail Installment Contract and Security Agreement* (hereinafter "Contract") to Movant in the principal amount of $27,344.00 on February 19, 1998, which is secured by personal property being more particularly described in the Contract and in Movant's Motion for Relief from the Automatic Stay filed contemporaneously herewith. True and correct copies of the Contract and the Certificate of Title evidencing the perfection of Movant's security interest in the personal property are attached to the Motion for Relief From Stay as Exhibit "A". As of November 17, 2005, the aggregate amount due and owing Movant under the terms of the contract is $27,197.78. The value of the property does not exceed the amount owed under the Contract

3. The information contained herein and in the attached Exhibits is based upon business records that Movant keeps in the ordinary course of its business, made at or near the time of the facts stated thereby, which Movant keeps, maintains and generates as part of its ordinary course of business. All of the above statements are true and correct and stated as facts based upon my own personal knowledge.

Robert Young
AFFIANT
Vanderbilt Mortgage & Finance

SWORN TO and SUBSCRIBED before me on this the 1st day of December, 2005

Notary Public
My Commission Expires: 12-4-06

EXHIBIT 1

# MANUFACTURED HOME RETAIL INSTALLMENT CONTRACT, SECURITY AGREEMENT AND DISCLOSURE STATEMENT

DEALER INSTRUCTIONS
(1) Customer must sign where "X" appears (2) Dealer must sign where → appears (3) White Copy—Dealer submits to assignee and gives to assignee (4) Green Copy—Give to Buyer (5) Yellow Copy—Give to Co-Buyer (6) Pink Copy—Dealer retains (7) Collateral Copy—For Recording, then given to assignee

DATE: 2-19-98

| BUYER(S) NAME | NUMBER AND STREET | CITY | STATE & ZIP |
|---|---|---|---|
| Sheila Y. Kidd | 83 Wynette Road | Sylacauga | AL 35150 |
| CO-BUYER(S) NAME | NUMBER AND STREET | CITY | STATE & ZIP |
| | | | |
| SELLER'S NAME | NUMBER AND STREET | CITY | STATE & ZIP |
| Oak Grove Mobile Home | 39904 US Highway 280 | Sylacauga | AL 35150 |

We, the undersigned Seller hereby sell, and you, the undersigned Buyer hereby purchase, subject to the terms and conditions hereinafter set forth the following described manufactured home complete with furniture, appliances, attachments and equipment ("Collateral"), and you hereby acknowledge delivery and acceptance of the Collateral in good and satisfactory condition.

Location of Collateral, if other than Buyer's above address: Same As Above

| YEAR | N/U | MANUFACTURER'S NAME | MODEL NAME & MODEL NO. | MANUFACTURER'S SERIAL NO. | DESCRIPTION | |
|---|---|---|---|---|---|---|
| | | | | | SQUARE FEET | COLOR |
| 1998 | New | Clayton | RANGER | CLA042803TN | 16x80 | |

ITEMS INCLUDED: ☒ Air Conditioning Unit(s) ☒ Range ☒ Refrigerator ☐ Freezer ☐ Washer ☐ Dryer ☒ Furniture (as per Mfg. floor plan) ☐ Awning(s) ☒ Skirting ☐ Accessory Shed ☒ Other Dishwasher

Collateral purchased for use primarily: ☒ Personal, Family or Household. ☐ Business.

TRUTH-IN-LENDING DISCLOSURES

| ANNUAL PERCENTAGE RATE | FINANCE CHARGE | Amount Financed | Total of Payments | Total Sale Price |
|---|---|---|---|---|
| The cost of Buyers' credit as a yearly rate. | The dollar amount the credit will cost Buyers. | The amount of credit provided to Buyers or on Buyers' behalf. | The amount Buyers will have paid after Buyers have made all payments as scheduled. | The total sale of Buyers' purchase on credit, including Buyers' downpayment of $ 3,035.00 |
| 9.25 % | $ 42,907.00 | $ 27,344.00 | $ 70,251.00 | $ 73,286.00 |

Buyers' payment schedule will be:

| Number of Payments: | Amount of Payments: | When Payments Are Due: |
|---|---|---|
| One Payment of | | |
| 300 Payments | $ 234.17 | Monthly, beginning MARCH 21, 1998 |
| One Final Payment | | |

Security: You are giving a security interest in the property being purchased.
☐ Other ______

Lien Filing Fees: $ 55.00

Late Charges: If a scheduled payment is more than 15 days late, you may be charged 5% of the unpaid amount of the payment or $5.00, whichever is less.

Prepayment: If you pay off early, you will not have to pay a penalty.

Assumption: (This applies only if you give your principal dwelling as security and you are purchasing that dwelling under this Contract.) Someone buying your home may not, except under certain circumstances, be allowed to assume the remainder of this Contract on its original terms.

See the contract documents for any additional information about nonpayment, default, any required repayment in full before the scheduled date, and prepayment refunds and penalties.

* means estimate

## ITEMIZATION OF THE AMOUNT FINANCED

1 Cash Price (Including any accessories, services, and taxes) $ 29,400.00 (1)

2 Total Downpayment = Net Trade-In $ 0.00 + Cash Downpayment $ 3,035.00
Your Trade-in is a ______ Year ______ Make ______ Model ______ $ 3,035.00 (2)

3 Unpaid Balance of Cash Price (1 minus 2) $ 26,365.00 (3)

4 Other Charges Including Amounts Paid to Others on Buyers' Behalf:

A Cost of Physical Damage Insurance Purchased through Seller and Paid to the Insurance Company Named Below—Covering Damage to the Property $ 0.00 **

B Cost of Optional Credit Insurance Paid to the Insurance Company or Companies Named Below Life $ 0.00 Disability, Accident and Health $ 0.00 $ 0.00 **

C Official Fees Paid to Public Officers $ 15.00

D Taxes Not Included in Cash Price $ 955.00

E Government License and/or Registration Fees (Itemize) $ 0.00

F Government Certificate of Title Fees $ 0.00

G Other Charges (Seller must identify who will receive payment and describe purpose)
to Chase Financial for Flood Ins Search $ 9.00 **
to ______ for ______ $ 0.00 **

Total Other Charges and Amounts Paid to Others on Buyers' Behalf $ 979.00 (4)

5 Amount Financed — Unpaid Balance (3+4) $ 27,344.00 (5)

** We may retain, or receive, a portion of these amounts.

Insurance: If any insurance is checked below, the policies or certificates issued by the Companies named will describe the terms and conditions.

Required Physical Damage Insurance: Physical damage insurance is required if the original Amount Financed in this Contract (less insurance charges) and the value of the Collateral to be insured both exceed $200.00. If such insurance is required, you may purchase it from anyone you want who is acceptable to us, or you may provide such insurance through an existing policy that is acceptable to us.

☐ You have elected to purchase the required and/or optional insurance through the Seller. The cost of this insurance is shown in 4A of the Itemization above. This insurance is described as follows:

CHECK ONE
Insurance Company: ______ Term: ______ Months
☐ Property Insurance (if mobilehome), including personal effects coverage of $ ______
☐ $ ______ Deductible Comprehensive including Fire, Theft and Combined Additional Coverage

☒ You have purchased, or will obtain required coverages through:
Insurance Company or Agent: PHILLIPS INSURANCE AGENCY

Insurance (Optional): Credit life insurance, credit disability insurance and mechanical repair insurance are not required to obtain credit, and will not be provided unless you sign and agree to pay the additional cost.

| Type | Premium | Term | Signature(s) |
|---|---|---|---|
| Credit Life | $ | | I want credit life insurance. |
| Joint Credit Life | $ | | We want joint credit life insurance. |
| Credit Disability | $ | | I want credit disability insurance. |
| Credit Life and Disability | $ | | I want credit life and disability insurance. |
| Joint Credit Life and Disability | $ | | We want joint disability insurance. |

CREDIT LIFE AND DISABILITY INSURANCE: If Buyers elect credit insurance coverage and are accepted by the insurance company, the terms and conditions will be as described in the policies or certificates issued by the insurance company. The original amount of the decreasing term credit life insurance will not exceed $ ______. Credit disability insurance payments will equal the monthly payment amount but will not be more than $ ______. Insurance Company: ______.

Credit Life insurance may not cover the entire balance of this obligation at the time of death if the original coverage selected is for a term or for an amount which is less than the term or the amount of the credit. Credit Disability insurance may not cover the entire period of disability if the period of disability exceeds the term of the coverage.

**THE INSURANCE, IF ANY, REFERRED TO IN THIS CONTRACT DOES NOT INCLUDE COVERAGE FOR BODILY INJURY LIABILITY, PUBLIC LIABILITY AND PROPERTY DAMAGE LIABILITY. SELLER WILL APPLY FOR COVERAGES CHECKED ABOVE ON BEHALF OF BUYER.**

By signing below, you consent to our sharing information we receive from and about you and your accounts with our affiliates and with others, including information that may be used to offer insurance and investment products to you.

You, individually and together, promise to pay to us the Amount Financed, shown above, together with finance charge on the unpaid balances thereof from time to time, at the Annual Percentage Rate shown above until the Amount Financed and any other sums you may become obligated to pay pursuant to the provisions of this contract are fully repaid. You will make payments according to the Payment Schedule shown above. The Payment Schedule assumes that each payment will be made exactly on the date due and in the amount scheduled. Accordingly, payments not made exactly according to the Payment Schedule may result in an increase or decrease in the total amount paid under the contract. The final payment will equal the then remaining unpaid balance of the contract, plus accrued and unpaid finance charge and other sums due hereunder, all as allowed by law.

To secure such payment, you give us a purchase money security interest under the Uniform Commercial Code in the Collateral and in all accessions to and proceeds of the Collateral. We hereby waive any other security interest or mortgage which would otherwise secure your obligations under this contract except for the security interests and assignments granted by you in this contract.

**The Buyer hereby acknowledges that he has received from the Seller a true copy of this foregoing document with all blanks suitably filled, and that such a copy was delivered to him by the Seller at the time of the execution thereof.**

Executed by the parties this 19 day of FEBRUARY 19 98

CAUTION—IT IS IMPORTANT THAT YOU THOROUGHLY READ THIS CONTRACT BEFORE YOU SIGN IT.

CO-BUYER'S NAME — NUMBER AND STREET — STATE & ZIP

Oak Grove Mobile Home — 39904 US Highway 280 — Sylacauga — AL 35150
SELLER'S NAME — NUMBER AND STREET — CITY — STATE & ZIP

We, the undersigned Seller hereby sell, and you, the undersigned Buyer hereby purchase, subject to the terms and conditions hereinafter set forth the following described manufactured home complete with furniture, appliances, attachments and equipment ("Collateral"), and you hereby acknowledge delivery and acceptance of the Collateral in good and satisfactory condition.

Location of Collateral, if other than Buyer's above address: Same As Above

| YEAR | N/U | MANUFACTURER'S NAME | MODEL NAME & MODEL NO. | MANUFACTURER'S SERIAL NO. | DESCRIPTION SQUARE FEET | COLOR |
|---|---|---|---|---|---|---|
| 1998 | New | Clayton | RANGER | CLA0428034TN | 16x80 | |

ITEMS INCLUDED: [X] Air Conditioning Unit(s) [X] Range [X] Refrigerator [ ] Freezer [ ] Washer [ ] Dryer [X] Furniture (as per Mfg. floor plan) [ ] Awning(s) [X] Skirting [ ] Accessory Shed [X] Other Dishwasher

Collateral purchased for use primarily: [X] Personal, Family or Household, [ ] Business.

TRUTH-IN-LENDING DISCLOSURES

| ANNUAL PERCENTAGE RATE<br>The cost of Buyers' credit as a yearly rate. | FINANCE CHARGE<br>The dollar amount the credit will cost Buyers. | Amount Financed<br>The amount of credit provided to Buyers or on Buyers' behalf. | Total of Payments<br>The amount Buyers will have paid after Buyers have made all payments as scheduled. | Total Sale Price<br>The total sale of Buyers' purchase on credit, including Buyers' downpayment of $ 3,035.00 |
|---|---|---|---|---|
| 9.25 % | $ 42,907.00 | $ 27,344.00 | $ 70,251.00 | $ 73,286.00 |

Buyers' payment schedule will be:

| Number of Payments: | Amount of Payments: | When Payments Are Due: |
|---|---|---|
| One Payment of | | |
| 300 Payments | $ 234.17 | Monthly, beginning MARCH 21, 1998 |
| One Final Payment | | |

Security: You are giving a security interest in the property being purchased.
[ ] Other

Lien Filing Fees: $ 15.00

Late Charges: If a scheduled payment is more than 15 days late, you may be charged 5% of the unpaid amount of the payment or $5.00, whichever is less.

Prepayment: If you pay off early, you will not have to pay a penalty.

Assumption: (This applies only if you give your principal dwelling as security and you are purchasing that dwelling under this Contract.) Someone buying your home may not, except under certain circumstances, be allowed to assume the remainder of this Contract on its original terms.

See the contract documents for any additional information about nonpayment, default, any required repayment in full before the scheduled date, and prepayment refunds and penalties.

ITEMIZATION OF THE AMOUNT FINANCED

1 Cash Price (including any accessories, services, and taxes) $ 29,400.00 (1)

2 Total Downpayment = Net Trade-in $ 0.00 + Cash Downpayment $ 3,035.00
Your Trade-in is a ____ Year ____ Make ____ Model $ 3,035.00 (2)

3 Unpaid Balance of Cash Price (1 minus 2) $ 26,365.00 (3)

4 Other Charges Including Amounts Paid to Others on Buyers' Behalf:

A Cost of Physical Damage Insurance Purchased through Seller and Paid to the Insurance Company Named Below—Covering Damage to the Property $ 0.00**

B Cost of Optional Credit Insurance Paid to the Insurance Company or Companies Named Below Life $ 0.00 Disability, Accident and Health $ 0.00 $ 0.00**

C Official Fees Paid to Public Officers $ 15.00

D Taxes Not Included in Cash Price $ 955.00

E Government License and/or Registration Fees (itemize) $ 0.00

F Government Certificate of Title Fees $ 0.00

G Other Charges (Seller must identify who will receive payment and describe purpose)
to Chase Financial for Flood Ins Search $ 9.00**
to ____ for ____ $ 0.00**

Total Other Charges and Amounts Paid to Others on Buyers' Behalf $ 979.00 (4)

5 Amount Financed — Unpaid Balance (3+4) $ 27,344.00 (5)

** We may retain, or receive, a portion of these amounts.

Insurance: If any insurance is checked below, the policies or certificates issued by the Companies named will describe the terms and conditions.

Required Physical Damage Insurance: Physical damage insurance is required if the original Amount Financed in this Contract (less insurance charges) and the value of the Collateral to be insured both exceed $300.00. If such insurance is required, you may purchase it from anyone you want who is acceptable to us, or you may provide such insurance through an existing policy that is acceptable to us.

CHECK ONE

[ ] You have elected to purchase the required and/or optional insurance through the Seller. The cost of this insurance [illegible] in 4A of the Itemization above. This insurance is described as follows:
Insurance Company: ____ Term: ____
[ ] Property insurance (if mobile home), including personal effects coverage of $____
[ ] $____ Deductible Comprehensive including Fire, Theft and Combined Additional Coverage

[X] You have purchased, or will obtain, required coverages through:
Insurance Company or Agent: PHILLIPS INSURANCE AGENCY

Insurance (Optional): Credit life insurance, credit disability insurance and mechanical repair insurance are not required to obtain credit, and will not be provided unless you sign and agree to pay the additional cost.

| Type | Premium | Term | Signature(s) |
|---|---|---|---|
| Credit Life | $ | | I want credit life insurance. |
| Joint Credit Life | $ | | We want joint credit life insurance. |
| Credit Disability | $ | | I want credit disability insurance. |
| Credit Life and Disability | $ | | I want credit life and disability insurance. |
| Joint Credit Life and Disability | $ | | We want joint disability insurance. |

CREDIT LIFE AND DISABILITY INSURANCE: If Buyers elect credit insurance coverage and are accepted by the insurance company, the terms and conditions will be as described in the policies or certificates issued by the insurance company. The original amount of the decreasing term credit life insurance will not exceed $____.
Credit disability insurance payments will equal the monthly payment amount but will not be more than $____. Insurance Company: ____.
Credit Life Insurance may not cover the entire balance of this obligation at the time of death if the original coverage selected is for a term or for an amount which is less than the term or the amount of the credit. Credit Disability Insurance may not cover the entire period of disability if the period of disability exceeds the term of the coverage.

THE INSURANCE, IF ANY, REFERRED TO IN THIS CONTRACT DOES NOT INCLUDE COVERAGE FOR BODILY INJURY LIABILITY, PUBLIC LIABILITY AND PROPERTY DAMAGE LIABILITY. SELLER WILL APPLY FOR COVERAGES CHECKED ABOVE ON BEHALF OF BUYER.

By signing below, you consent to our sharing information we receive from and about you and your accounts with our affiliates and with others, including information that may be used to offer insurance and investment products to you.

You, individually and together, promise to pay to us the Amount Financed, shown above, together with finance charge on the unpaid balances thereof from time to time, at the Annual Percentage Rate shown above until the Amount Financed and any other sums you may become obligated to pay pursuant to the provisions of this contract are fully repaid. You will make payments according to the Payment Schedule shown above. The Payment Schedule assumes that each payment will be made exactly on the date due and in the amount scheduled. Accordingly, payments not made exactly according to the Payment Schedule may result in an increase or decrease in the total amount paid under the contract. The final payment will equal the then remaining unpaid balance of the contract, plus accrued and unpaid finance charge and other sums due hereunder, all as allowed by law.

To secure such payment, you give us a purchase money security interest under the Uniform Commercial Code in the Collateral and in all accessions to and proceeds of the Collateral. We hereby waive any other security interest or mortgage which would otherwise secure your obligations under this contract except for the security interests and assignments granted by you in this contract.

**The Buyer hereby acknowledges that he has received from the Seller a true copy of this foregoing document with all blanks suitably filled, and that such a copy was delivered to him by the Seller at the time of the execution thereof.**

Executed by the parties this 19 day of FEBRUARY, 19 98

CAUTION — IT IS IMPORTANT THAT YOU THOROUGHLY READ THIS CONTRACT BEFORE YOU SIGN IT.

Oak Grove Mobile Home (Name of Dealer-Seller) — X [signature] (Buyer) (SEAL)

→ By: [signature] (Signature of Representative) — X ____ (Co-Buyer) (SEAL)

X ____ (SEAL)

X ____ (SEAL)

Z-OD102 AL Form 4833 1/96
Alabama Fed. Preempt Simple Interest

## OTHER IMPORTANT AGREEMENTS

**Ownership and Risk of Loss:** You agree to pay us all that you owe under this contract even if the property is damaged, destroyed or missing. You agree not to transfer or remove the Collateral from its location as specified on the reverse side without our written permission. You agree to maintain the Collateral and keep it in good repair. You agree: (a) not to allow the Collateral to deteriorate in condition or value beyond normal wear and tear; (b) that you will not permit or allow any adverse lien or encumbrance whatsoever; (c) that you will not use the Collateral or any part thereof in violation of state, federal or municipal law or ordinance, and (d) not to expose the property to misuse or confiscation. If we pay any repair bills, storage bills, taxes, fines, or other charges on the property, you agree to repay the amount when we ask for it together with finance charges at the Annual Percentage Rate shown on the reverse side on the unrepaid portions of such amount. You agree to comply with all registration, licensing, tax and title laws applicable to the property. You will pay, when due, all taxes and governmental assessments at any time levied on or against, or due for, or which attach to the Collateral after its delivery to you. You agree that the Collateral, wherever placed, shall remain personal property and shall not become part of the freehold. You agree to execute all documentation necessary to perfect our security interest in the Collateral; and if you apply for a certificate of title for any item of Collateral, you will have our lien noted thereon and will, if allowed by law, deliver or cause the certificate of title to be delivered to us. You may not rent the Collateral, or sell, assign, lease or otherwise dispose of it, or any interest in it, or consign it without our prior written consent. You may not allow any lien on or grant any security interest in the Collateral other than ours.

**Security Interest:** You give us a purchase money security interest in the property being purchased (Collateral), in all proceeds therefrom and in any accessories, equipment and replacement parts installed in the Collateral. The security interest also covers insurance premiums and charges for service contracts returned to us, proceeds of any insurance policies or service contracts on the Collateral, and proceeds of any insurance policies on the life or health of the Buyers, if such policies are financed in this Contract. This secures payment of all amounts you owe in this contract and in any transfer, renewal, extension or assignment of this contract. It also secures other agreements made by you in this contract. You waive, with respect to this property securing this obligation and, then, only to the extent allowed by law, all benefit of valuation, appraisement, and homestead or other exemption laws now in force or hereafter enacted, including stay of execution and condemnation.

**PREPAYMENT: YOU CAN PREPAY THIS DEBT IN FULL OR IN PART WITHOUT PENALTY.** Accrued charges to date of prepayment must be paid at the time of prepayment.

**Late Charge:** If a scheduled payment is more than 15 days late, you may be charged 5% of the unpaid amount of the payment or $5.00, whichever is less.

**Dishonored Check Charge:** You will be charged $20.00, or the actual charge imposed, by the depository institution for the return of unpaid or dishonored instruments, whichever is greater, for each check or similar instrument you give us which is returned unpaid or otherwise dishonored.

**Insurance:** You agree to obtain at your own expense and to keep in force insurance on the Collateral against loss by fire, theft, comprehensive, collision, damage, flood, and other hazards as appropriate and reasonable in relation to the character and value of the Collateral, for such amounts and periods by an insurer that you choose, or through an existing policy, subject to our approval. As indicated on the reverse side, if you choose, we will obtain property insurance for you at the premium shown. Whether the insurance is provided by you or by us, you agree to pay all premiums for this insurance when the premiums are due and payable. If you elect to provide this insurance, you shall deliver to us a fully paid up policy of insurance against the aforementioned hazards within five (5) days from the date hereof, with loss payable clause in favor of us. If you fail to deliver such a policy, or if any policy required hereunder is subsequently canceled or expires, you shall immediately furnish to us a fully paid replacement policy suitable to us. If you fail to obtain the insurance or pay the premiums, you agree that we are authorized to and may, at our sole option, obtain or renew, and pay premiums for, the insurance coverages we, in our sole discretion, believe necessary. You agree that insurance coverages we obtain may cover your interests and our interests, or may cover only our interests, and may at our sole option insure against loss in amounts equal to the unpaid amount due under this contract, all as allowed by law. If we exercise this contractual right, the insurance policy will be placed by an affiliated insurance agency which may realize a financial benefit from the transaction. If we pay to obtain or renew insurance coverage for the Collateral, we will, within a reasonable time after advancing such sums, notify you of the amount advanced, the required Terms of repayment of that amount and a brief description of the insurance purchased, including the type and amount of coverages. You promise to repay the full cost of any insurance so purchased upon demand or upon such other terms as we, in our sole discretion, determine. We may show the amount of any such insurance premium we pay as part of the total outstanding balance under this contract. Whether or not any such insurance premium is shown as part of the total outstanding balance, we may continue to demand the immediate full repayment of such premium or may demand payment of such premium upon such other terms as we, in our sole discretion, determine. The Collateral shall secure the repayment of premiums for any insurance purchased by us pursuant to this paragraph. The unpaid portion or portions of any insurance premium paid by or advanced by us shall accrue finance charge from time to time at the Annual Percentage Rate shown on the reverse side hereof. If we do not obtain the replacement insurance, none of our rights and remedies under this contract will be prejudiced.

To enable us to exercise our options under the above circumstances to insure or renew coverage, you grant us the right to use or disclose any and all information we deem relevant to acquiring replacement insurance coverage. You assign to us all amounts in payment of insurance losses for the purposes of being applied, at our option, to your debt hereunder, to repair, replace or restore the Collateral, or both. Any excess after such application shall be returned to you. To implement this assignment, you appoint us as your Attorney-in-Fact to: (a) accept refunds of unearned insurance premiums, (b) make all adjustments for loss, (c) accept proceeds of settlement on claims made on said insurance policies and (d) sign your name upon any checks, drafts, and documents required in connection with any loss or refund.

This contract may contain charges for optional insurance or service contracts. If the property is repossessed, you agree that we may claim benefits under these contracts and terminate them to obtain refunds of unearned charges.

If your account is not paid off, and any charge for required insurance is returned to us, it may be credited to your account or used to buy other insurance or insurance which covers only our interest in the property. If your account is not paid off, any refund which we receive on optional insurance or service contracts will be credited to your account. Credits to your account will be applied to as many of your installments as they will cover, beginning with the final installment. If, however, any required or optional insurance for which a charge is included in this contract is terminated prior to the term for which it is written because you have prepaid this debt in full, you are entitled to a refund of any unearned premiums. You will be notified of what is done.

**Time is of the Essence:** You understand that all required payments must be made on the day due.

**Exercising Our Rights:** If you remit payments which are less in amount than required by this contract, our acceptance of same shall not constitute a novation, either expressed or implied; nor shall acceptance of such reduced payment waive the original terms of this contract. Our acceptance of any payment after it is due shall not constitute a waiver of any of the original terms of this contract. Our waiver of an event of default on one occasion shall not constitute a waiver of future instances of the same event of default or of other events of default at the same time. We may delay enforcing any of our rights under this contract without waiving or losing them. We may waive a right against a buyer, or release a buyer, without waiving the same or any other right against, or releasing, any other buyer.

**Default:** You are in default of your obligations under this Contract if any of the following events or conditions occur: (a) you fail to pay any installment when due, or you fail to perform any of your other obligations under this Contract; (b) any warranty, representation or statement you made or caused to be made is false or breached; (c) the Collateral is lost, stolen, damaged, destroyed, suffers a substantial reduction in value as a result of casualty, or is sold or encumbered; or it is levied on, seized or attached; (d) you are unable to pay your debts as they become due, you become insolvent, a receiver is appointed for you, you assign property for the benefit of creditors, a proceeding under any bankruptcy or insolvency law is begun against you; (e) you die (or a partner dies if you are a partnership); (f) if you are a corporation or partnership, the corporation or partnership dissolves, merges, consolidates or transfers a substantial portion of its property; (g) you break any promise or breach any provision contained in this contract.

**Notice of Right to Cure Default:** If you default in the payment of any installment due or in the performance of any conditions required hereunder or if you violate any of the terms and provisions set forth herein, we will provide you with a notice giving you thirty (30) days after the notice is sent within which to cure your default. You are not entitled to such notice of default more than twice in any one-year-period or if the Collateral is abandoned. If you do not cure your default during the thirty (30) day cure period following the notice, or if you have already received two (2) notices of default in the one-year-period preceding the current default or have abandoned the Collateral, we may at our sole option and without notice to you require immediate payment of the entire unpaid balance due hereunder, less any refunds of unearned charges computed as upon prepayment, and proceed to exercise all our rights and remedies under this contract and applicable law.

**Demand for Full Payment and Additional Remedies on Default:** ALL THE PROVISIONS OF THIS PARAGRAPH ARE SUBJECT TO THE APPLICABLE NOTICE AND RIGHT TO CURE DEFAULT PROVISIONS CONTAINED IN THIS CONTRACT AND UNDER APPLICABLE STATE AND FEDERAL LAW. If you default in any of your promises or obligations under this contract, and do not cure your default or are not entitled to an opportunity to cure your default, we may require that you immediately pay the entire unpaid balance of the Amount Financed together with accrued and unpaid finance charge to the date of payment in full and any other unpaid sums due under this contract. If you default, upon our request you agree to assemble the Collateral and make it available to us at a place we designate which is reasonably convenient to us and to you. If you default, we will also have all the rights and remedies of a secured creditor under the Alabama Uniform Commercial Code and the Alabama Consumer Finance law. These rights and remedies include, but are not limited to, the right to peaceably repossess the Collateral and to sell such Collateral upon reasonable notice to you at public or private sale, all as allowed or required by applicable law. The requirement of reasonable notification of the time and place of any public or private sale or other intended disposition of the Collateral will be met if such notice is mailed, postage prepaid, to you at your last known address ten (10) days prior to the date on or after which such sale or other disposition of the Collateral will occur. We may purchase the Collateral at any public sale.

We will apply the proceeds of any sale of the Collateral, less our reasonable out-of-pocket expenses of retaking, holding, preparing for sale and selling the Collateral, and less our reasonable attorney's fees, not to exceed 15% of the unpaid debt, paid to a lawyer who is not our salaried employee, all as allowed by applicable law, to the unpaid balance due under this contract. If we repossess or accept voluntary surrender of the Collateral and the cash price exceeded the minimum amount specified under Alabama Consumer Finance law, you will remain liable for, and promise to pay upon our demand, any remaining deficiency balance after such application of the sale proceeds.

In taking possession of the Collateral, we may take possession of any personal effects in or upon the Collateral at the time of retaking. We will give you written notice, at your last known address, via regular mail, of the acquisition of any such personal effects. If you do not claim the personal effects within 30 days after notice is mailed, we may retain them subject to your rights, or we may sell or otherwise dispose of them in a reasonable manner, all as allowed by law, and distribute any proceeds according to applicable law.

**Getting the Collateral Back After Repossession:** If we repossess the Collateral, you have the right to get it back (redeem) by paying the entire amount you owe on the contract (not just past due payments) plus our reasonable out-of-pocket costs of retaking, holding and preparing the Collateral for sale, together with our reasonable attorney's fees, not to exceed 15% of the unpaid debt, paid to a lawyer who is not our salaried employee, all as allowed by law. Your right to redeem the Collateral will end when it is sold.

**Additional Provisions:** You represent that the allowance set forth for the property traded in is the monetary value thereof assigned thereto in good faith, and that no extension of credit other than that recited herein exists or is to be made to you in connection with the purchase of the Collateral described herein. You warrant that the property traded in, if any, is free from any encumbrance, and breach of this warranty shall be a breach of this Contract. Upon notice of assignment, payment to anyone other than the assignee is at your risk; subject to the foregoing limitation, Seller shall not be agent of the assignee for transmission of payments or for any other purpose.

**Changes to this Contract:** Any change in terms of this contract must be in writing and signed by the Seller. No oral changes are binding.

**Warranties Seller Disclaims:** Buyer agrees that Seller makes no express warranties on the Collateral. Buyer further agrees that Seller makes no implied warranties of merchantability or fitness on the Collateral, unless required by law, and then only for the period of time set by law. Any statement as to model year of the Collateral is for identification purposes only and is not a warranty or representation.

This provision does not affect any warranties covering the Collateral which may be provided by the manufacturer of the Collateral.

**Interpretation of Agreement:** In this Contract the words "you," "your" and "yours" mean each and all those who sign this Contract as Buyers or Co-Buyers, and their heirs, executors, administrators, successors and assigns. The words "we," "us" and "our" mean the Seller shown on the reverse side, and if this Contract is assigned, its successors and assigns and any other holder of this Contract. You agree that all terms of your agreement with us are contained in this written document. If any provision of this Contract is declared invalid or is prohibited by applicable law, such provision shall be ineffective to the extent of such declaration or prohibition without affecting any other provisions of this Contract, which other provisions shall remain enforceable. Paragraph headings are for convenience only and shall not be used in the interpretation of this Contract.

**Governing Law:** This Contract has been delivered in the State of Seller's place of business and will be governed by the laws of that State and applicable federal law.

**NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**

**The preceding NOTICE applies only to goods or services obtained primarily for personal, family, or household use.**

In consideration of granting this credit to the Buyer named above, and not for purposes of being obligated hereunder, the undersigned hereby grants to the Seller a security interest in the Collateral described herein and all proceeds thereof, in accordance with all of the terms and conditions of this Retail Installment Contract.

______________________ (Witness) ______________________ (Date)

### SELLER'S ASSIGNMENT AND WARRANTY

FOR VALUE RECEIVED, the undersigned does hereby sell and assign on 2-19 19 98 to

Chase Manhattan Bank USA, N.A. c/o CFCS 375 Northridge Rd., Ste. 505, Atlanta, GA 30350

(FULL CORPORATE NAME AND ADDRESS)

or order, all right, title and interest in and to the contract set forth above and on the reverse side hereof and the property covered thereby and authorizes said assignee, or order, to do every act and thing necessary to collect and discharge the same, including the right to endorse any check or draft payable to the undersigned in connection with this obligation.

We shall have no authority without assignee's prior written consent to accept collections or receipts of contract or the return of the property or equipment or modify the terms of the contract. The following provisions as checked apply to this assignment.

☒ WITHOUT RECOURSE

This assignment is made WITHOUT RECOURSE except as to the following warranties and representations made by the Seller to WE. That the said contract is a bona fide one and was [illegible]

☐ WITH RECOURSE

The undersigned GUARANTEES the within contract and the property described therein [illegible]



051 001 000 00979 3021

2

EXHIBIT 2

# STATE OF ALABAMA
## DEPARTMENT OF REVENUE

## CERTIFICATE OF TITLE FOR A VEHICLE 0330

| TITLE NO. | VEHICLE IDENTIFICATION NUMBER | TRANS. CODE | DATE ISSUED |
|---|---|---|---|
| 2246315B | CLA042803TN | 01 | 04/16/1998 |

| YR. MODEL | MAKE | MODEL | BODY TYPE | PREV AL TITLE NO. |
|---|---|---|---|---|
| 1998 | CLAYTON | RANGER | HT | |

| CYL | NEW | USED | DEMO | PURCHASE DATE | NO. LIENS | COLOR | ODOMETER |
|---|---|---|---|---|---|---|---|
| 00 | XX | | | 02/19/1998 | 1 | GREEN | EXEMPT |

NAME(S) AND MAILING ADDRESS OF OWNER(S)

KIDD SHEILA Y

83 WYNETTE RD
SYLACAUGA AL 35150

RESIDENT ADDRESS IF DIFFERENT

MAIL TO

CHASE MANHATTAN BANK USA N
P O BOX 501416
ATLANTA GA 31150-1416

LEGEND(S)

RELEASE OF LIEN

The holder of Lien on the vehicle described in this Certificate does hereby state that the lien described in said Certificate of Title is released and discharged.

First Lienholder

By ____________ Signature of Authorized Agent

Date ____________

1ST LIENHOLDER'S NAME ADDRESS AND LIEN DATE 02/19/1998

CHASE MANHATTAN BANK USA NA
P O BOX 501416
ATLANTA GA 31150

2ND LIENHOLDER'S NAME ADDRESS AND LIEN DATE

Second Lienholder

By ____________ Signature of Authorized Agent

Date ____________

This certificate serves as an official document of the Department of Revenue and prima facie evidence that an application for certificate of title has been made for the vehicle described herein, pursuant to the provisions of the Motor Vehicle laws of this state, and the applicant named on the face hereof has been duly recorded as the lawful owner of the vehicle so described. Further, the said vehicle is subject to the security interest by lien(s) shown hereon, if any. But, said described vehicle may be subject to a mechanic's lien or a lien given by statute to the United States, this State or any political subdivision of this State or other encumbrances not required to be filed with this Department.

COMMISSIONER OF REVENUE

CONTROL NUMBER

21000229

KEEP IN A SAFE PLACE — ANY ALTERATION OR ERASURE VOIDS THIS TITLE

AMERICAN BANK NOTE COMPANY